UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS ENRIQUE SERRANO-AGUILAR,<br><br>    Petitioner,<br><br>    v.<br><br>JEFFREY BEARD,<br><br>    Respondent. | No. 1:15-cv-00280-LJO-SKO HC<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner, Jesus Enrique Serrano-Aguilar,[1] is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges three grounds for relief: (1) a due process violation arising from the trial court's abusing its discretion and denying Petitioner's *Pitchess* motion; (2) ineffective assistance of trial counsel based on counsel's failure to articulate the need for a continuance; and (3) submission of the gang enhancement to the jury on an erroneous theory. Respondent contends that ground three is procedurally barred and that, in any event, Petitioner has failed to establish a basis for habeas relief on any of his claims.

I. **Factual Background** [2]

    A. **The Underlying Incident**

On April 3, 2011, Bakersfield Police Officers Matthew Tramel and Joe Cooley, both of whom were members of the gang unit, were on patrol in a marked car when they observed

---

[1] Although state records indicate Petitioner's surname to be Serrano-Aguilera, the petition filed in this Court indicates Petitioner's surname to be Serrano-Aguilar.

[2] The factual statement has been adapted from *People v. Serrano-Aguilera*, 2013 WL 5569163 (Cal. App. Oct. 10, 2013) (No. F064196).

1

Petitioner riding a bicycle against traffic. When Tramel activated his lights and siren, Petitioner began to pedal vigorously in an apparent attempt to escape the officers. Tramel pulled the squad car parallel with Petitioner, and repeatedly ordered Petitioner to stop. Petitioner continued to accelerate while telling the officers that he had no brakes.

When Petitioner finally stopped, Tramel got out of the squad car and ordered Petitioner to turn around and put his hands on his head. Instead of turning, Petitioner took a step away, then pulled away when Tramel grabbed his hand. By each seizing one of Petitioner's hands, Tramel and Cooley were able to control and handcuff Petitioner.

Tramel asked Petitioner if he had anything illegal "on him." Petitioner disclosed that he had a gun in his right front pants pocket. Tramel removed a loaded .32-caliber pistol loaded with three live rounds from Petitioner's pocket. The gun was operational.

After reading Petitioner the *Miranda*[3] warnings, Tramel asked him why he was fleeing the officers. Petitioner replied that he did not want to go to jail. Tramel testified that:

> [Petitioner] stated that he was delivering it to another member of the Colonia Bakers. I believe his words were to the effect of he was delivering the gun to a "Colonia homie." Which I had him elaborate on. Which I asked him to elaborate on. He said it was another member of the Colonia Bakers criminal street gang.

Petitioner stated that he was a member of the Colonia Bakers criminal street gang. He had friends and family in the gang.

### B. <u>Gang Expert Testimony</u>

Bakersfield Police Officer Isaac Aleman, who was assigned to the gang unit, testified to his opinion that Petitioner was a member of the Colonia Bakers criminal street gang on April 3, 2011. The Colonia Bakers, a subset of the Sureño criminal street gang, engage in an ongoing pattern of criminal activity including illegal weapons possession, robbery, and murder. Petitioner's membership was evidenced by his tattoos and self-identification as a gang member.

Petitioner bore a tattoo across the back of his head that read "Colonia" in five-inch letters. "Eastside" was tattooed on Petitioner's right forearm, and Colonia was tattooed on his left hand. The letter C was tattooed on Petitioner's index finger, and a skull typical of the Colonia Bakers

---
[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

street gang was tattooed on the top of his hand. Tattooed on his shoulder was "RIP colonieros" and the names "Shrek" and "Crow." Shrek and Crow were the monikers of two Colonia Bakers gang members murdered by members of a rival gang.

To ensure prisoner safety, when booking an individual into jail or prison, officers typically ask the prisoner whether he is a gang member or has other enemies. When booked into the county jail on April 3, 2011, Petitioner stated that he belonged to "South" and his clique was Colonia. Petitioner also claimed South and Colonia in bookings on July 28, 2002; July 31, 2009, and September 12, 2010. On December 2, 2004, and May 6, 2007, Petitioner claimed South. In the course of the September 2010 booking, Petitioner told Officer Ryan Kroeker that he had belonged to the Colonia Bakers gang "for a long time."

**II.     Procedural Background**

Following trial, a Kern County jury convicted Petitioner of (1) possession of a firearm as a felon (former Cal. Penal Code § 12021(a)(1)), (2) active participation in a criminal street gang (Cal. Penal Code § 186.22(a)), and (3) resisting a police officer (Cal. Penal Code § 148(a)(1)). The jury found true the allegation that Petitioner committed the firearm offense for the benefit of, at the direction of, or in association with a criminal street gang with specific intent to promote, further, or assist in criminal conduct by gang members (Cal. Penal Code § 186.22(b)(1)). The parties stipulated to Petitioner's prior felony convictions. The trial court sentenced Petitioner to an aggregate term of 15 years in prison.

Petitioner filed a direct appeal to the California Court of Appeal, which reversed Petitioner's conviction on count two but affirmed the remainder of the judgment. The California Supreme Court summarily denied the petition for review.

On February 23, 2015, Petitioner filed a federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**III.    Standard of Review**

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April

24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because Petitioner filed it after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim, on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. To do so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court

4

must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

### IV. Due Process: Denial of *Pitchess*[4] claim

As the first ground for habeas relief, Petitioner contends that the trial court violated his right to due process by denying a continuance to permit Petitioner to file a *Pitchess* motion. Respondent counters that because Petitioner has failed to show that denying the requested continuance was prejudicial, he is not entitled to habeas relief.

#### A. Trial Court Proceedings

Beginning at the September 2, 2011, preliminary hearing, Officer Tramel testified that after he and Officer Cooley arrested Petitioner, Petitioner disclosed his possession of the concealed firearm and told the officers that he was delivering it to a fellow gang member. Although the defense questioned Tramel generally regarding the completeness and accuracy of

///

---

[4] *Pitchess v. Superior Court,* 11 Cal. 3d 531 (1974).

his report, it did not challenge Tramel's testimony concerning Petitioner's asserted reason for possessing the gun.

In a later motion, the defense contended that Petitioner's arrest was illegal since the officers were outside the jurisdiction of the Bakersfield Police Department and sought suppression of evidence, including all of Petitioner's statements to the officers. The trial court denied the motion. Although a claim that Tramel had falsely represented Petitioner's post-arrest statement would also have supported a suppression motion, neither Petitioner himself nor defense counsel alleged that Tramel had lied.

Trial began with motions *in limine* on November 7, 2011. Petitioner's written motion *in limine* sought exclusion of witnesses, bifurcation of prior convictions, and exclusion of all statements made by Petitioner, or in the alternative, determination of the admissibility of each statement under Evidence Code § 402.

When the *in limine* hearing convened, Petitioner's attorney, Mark S. Aguilar, brought a motion for a continuance to permit Petitioner to file a *Pitchess* motion. Aguilar stated that, for the first time that morning, Petitioner had advised Aguilar that he had never told Tramel he was taking the gun to another gang member and that Tramel was lying when he testified that Petitioner made such a statement. In response to the trial court's questioning, Aguilar stated that although he had spoken with Petitioner approximately three times while preparing for the trial, Petitioner had not informed him of grounds for the *Pitchess* motion until the parties had been assigned to a department earlier that morning. The prosecution objected to the granting of a continuance, arguing that the motion was untimely. The trial court denied the continuance motion, finding that it was untimely and did not satisfy the procedural requirements of Evidence Code § 1043.

///

At trial, Tramel again testified that following administration of *Miranda* warnings, Petitioner had stated that he was taking the gun to another member of the Colonia Bakers criminal street gang. Petitioner neither testified nor presented any witnesses to counter Tramel's testimony.

### B. State Court Habeas Review

The last reasoned review of this claim is set forth in the decision of the Court of Appeal. *People v. Serrano-Aguilera*, 2013 WL 5569163 (Cal. App. Oct. 10, 2013) (No. F064196). The state court rejected Petitioner's claim that the trial court's denial of a continuance constituted an abuse of discretion and violated Petitioner's due process rights. *Id.* at *4. The court wrote:

> "[All] proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time." ([Evid. Code] § 1050, subd. (a).) "Continuances shall be granted only upon a showing of good cause." (*Id.*, subd. (e).) If a moving party failed to give proper notice of a motion for continuance, and is unable to show good cause for that failure, "the motion for continuance shall not be granted." (*Id.*, subd. (d).)
>
> [Petitioner] argues that trial counsel "had just learned of the need for a continuance, explaining the delay." But explaining a delay does not necessarily excuse it. Defendant was present at the preliminary hearing at which Tramel testified. Yet, [Petitioner] did not tell counsel he believed Tramel had fabricated [Petitioner's] statement until the day set for trial, more than two months after the preliminary hearing. [Petitioner's] failure to tell counsel of his allegation that Tramel was lying about a key piece of evidence is not good cause justifying delay in moving for a continuance.
>
> Because [Petitioner] made no showing of good cause why the motion was not made earlier, the trial court properly denied it. (See [Cal. Evid. Code] § 1050, subds. (d), (e).)

*Serrano-Aguilera*, 2013 WL 5569163 at *4.

### C. State Law Governs *Pitchess* Motions

In *Pitchess*, the California Supreme Court "established that a criminal defendant could 'compel discovery' of certain relevant information in the personnel files of police officers by making 'general allegations which establish some cause for discovery' of that information and by

7

showing how it would support a defense to the charge against him." *Warrick v. Superior Court*, 35 Cal. 4th 1011, 1018-19 (2005). In 1978, the California legislature codified the *Pitchess* holding in California Penal Code §§ 832.7 and 832.8, and Evidence Code §§ 1043-1045. *Id.* at 1019. Under the statutory scheme, Penal Code § 832.8 defines personnel records and declares them to be confidential, and Evidence Code §§ 1043 and 1045 set out the procedures for discovery. *City of Los Angeles v. Superior Court*, 29 Cal. 4th 1, 9 (2002). The statutory procedure is as follows:

> [S]ection 1043, subdivision (a) requires a written motion and notice to the governmental agency which has custody of the records sought, and subdivision (b) provides that the motion shall include, inter alia, "(2) a description of the type of records or information sought; and [¶] (3) Affidavits showing good cause for the discovery and disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has such records or information from such records."
>
> *Id.* (quoting *City of Santa Cruz v. Municipal Court*, 49 Cal. 3d 74, 83 (1989)).

The written motion must be filed at least 16 court days before the hearing. Cal. Evid. Code § 1005(13)(b). After the movant has established good cause, the trial court must conduct an *in camera* review of the records in accordance with Evidence Code § 915 to exclude certain categories of information enumerated as relevant in §1045(b): complaints more than five years old, conclusions of the officer who investigated the citizen complaint, and facts "so remote as to make [their] disclosure of little or no practical benefit." *Warrick*, 35 Cal. 4th at 1019; *City of Los Angeles*, 29 Cal. 4th at 10.

A person in custody pursuant to a state court judgment can obtain a federal writ of habeas corpus only on the ground that he is in custody in violation of the Constitution or laws or treaties on the United States. 28 U.S.C. § 2254(a). Resolution of a *Pitchess* motion is a matter of state discovery law. "An alleged violation of state discovery procedures does not warrant federal

8

habeas relief." *Shaw v. Prosper*, 2009 WL 6467033 at *5 (C.D.Cal. Nov. 10, 2009) (No. CV 07-7213-DDP(E)) (citing *Coleman v. Calderon*, 150 F.3d 1105, 1112 (9th Cir.), rev'd on other grounds, 525 U.S. 141 (1998)). Thus, an alleged *Pitchess* violation does not state a cognizable claim for federal habeas relief. *Johnson v. Galaza*, 2009 WL 890871 at *3 (N.D.Cal. Mar. 31, 2009) (No. C 05-4612 MMC (PR)).

Even if a state prisoner can somehow allege a federally cognizable claim -- i.e., for suppression of exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), he must establish that his inability to discover *Pitchess* materials had a substantial or injurious effect on the jury's verdict. *Penry v. Johnson*, 532 U.S. 782, 796 (2001). "There is no general constitutional right to discovery in a criminal case," however, "and *Brady*, which addressed only exculpatory evidence, did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). "'[T]he due process clause has little to say regarding the amount of discovery which the parties must be afforded.'" *Id.* (quoting *Wardius v. Oregon*, 412 U.S. 470, 474 (1973)).

Here, Petitioner has failed to establish that any personnel records including evidence of police misconduct by Tramel or Cooley even existed, much less demonstrate with reasonable particularity how his inability to discover unspecified *Pitchess* evidence had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry*, 532 U.S. at 796. Petitioner's *Pitchess* claim is wholly speculative and merely assumes that Tramel's personnel file would have included some evidence to support Petitioner's eleventh hour claim that Tramel was lying about Petitioner's statement. Thus, without ever establishing the existence of a colorable *Pitchess* claim, Petitioner argues that the trial court violated his federal rights of due process by failing to grant a continuance to permit Petitioner to file a *Pitchess* motion.

///

///

9

**D.** <u>**Trial Court's Denial of a Continuance Was Not an Abuse of Discretion**</u>

The Court grants trial judges broad latitude in matters related to the scheduling of trials. *Shaw*, 2009 WL 6467033 at *8. The burden of scheduling the parties, their counsel, witnesses, and jurors to the same place at the same time "counsels against continuances except for compelling reasons." *Id.* As a result, trial courts have broad discretion in deciding whether or not to grant a motion for continuance. *Id.* Federal precedent establishes only that a defendant's right to assistance of counsel may be violated by unreasoning and arbitrary "insistence on expeditiousness in the face of a justifiable request for delay." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983); *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Because *Morris* and *Ungar* addressed requests for continuances relating to the availability of defense counsel, their holdings have limited applicability to the requested continuance for discovery in this case.

Whether the denial of a motion for continuance constitutes an abuse of discretion must be determined on a case-by-case basis. *Armant v. Marquez*, 772 F.2d 552, 556 (9th Cir. 1985); *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985). A reviewing court must determine whether denial of the motion was arbitrary or unreasonable based on four factors: (1) the appellant's degree of diligence before he sought the continuance; (2) the utility of granting the continuance; (3) the inconvenience that granting the continuance would cause for the court or the government; and (4) the amount of prejudice to be the appellant if the continuance was denied. *Id.* "At a minimum . . . in order to succeed the appellant must show some prejudice resulting from the court's denial." *Armant*, 772 F.2d at 556-57. "None of the first three factors is ordinarily dispositive. The defendant must, however, establish the fourth—prejudice." *United States v. Rivera-Guerrero,* 426 F.3d 1130, 1139 (9th Cir. 2005).

The extent of Petitioner's diligence is disputed. From the time of Petitioner's arrest, Tramel consistently reported that Petitioner said that he was taking the handgun to another gang

10

member. Although Petitioner alleges that before the morning of trial, he told defense counsel that he never made such a statement and Tramel was lying, counsel told the trial court that he had met with Petitioner on three occasions before trial, but Petitioner had never denied making the statement to Tramel until just before the hearing on motions *in limine*. The trial court found that Petitioner had to have known of Tramel's account since he had been present at the preliminary hearing, yet he had not denied making the statement until just before the *in limine* hearing. The trial court's analysis is a reasonable interpretation of the evidence.

The utility of granting a continuance is uncertain. Petitioner assumes that review of Officer Tramel's personnel records would have revealed information likely to have undermined Tramel's testimony concerning Petitioner's statement but provides nothing to support that conclusion. In contrast, granting a continuance would have substantially inconvenienced the state court and the prosecution. The defense first sought the continuance at the *in limine* hearing on the morning of trial. Potential jurors, witnesses, and the prosecution were ready to proceed. As the Central District wrote in *Shaw* (2009 WL 6467033 at *8), the burden of scheduling the parties, their counsel, witnesses, and jurors to the same place at the same time "counsels against continuances except for compelling reasons."

Because the record contains no information concerning the contents of Tramel's personnel file, the resulting prejudice required by the fourth factor is also uncertain. "'Where the denial of a continuance prevents the introduction of specific evidence, the prejudice inquiry focuses on the significance of that evidence." *Id.* (quoting *Rivera-Guerrero,* 426 F.3d at 1142). In *Reyes v. Yates*, 2010 WL 2598280 (C.D.Cal. May 3, 2010) (No. CV 05-5435 DOC (JC)), the district court rejected a petitioner's claim that trial counsel provided ineffective assistance by failing to make a *Pitchess* motion. The court wrote:

///

11

> Petitioner fails to demonstrate a reasonable probability that the result of the proceedings would have been different had counsel made a formal *Pitchess* motion. During trial, the court twice denied requests for *Pitchess* discovery specifically because neither petitioner's counsel nor counsel for petitioner's codefendant were able to establish a sufficient factual foundation of present police misconduct to warrant discovery of police personnel records. To warrant discovery of the officers' personnel files, trial counsel would have had to submit a declaration showing "good cause" for the discovery, setting forth, *inter alia*, the materiality of the requested documents to the subject matter involved in the criminal proceedings. *See* Cal. Evid. Code § 1043(b)(3); *see generally City of Santa Cruz*, 49 Cal.3d at 82-83 []. To show materiality, counsel would have had to set forth a "specific factual scenario" establishing a "plausible factual foundation" for allegations of present police misconduct warranting discovery of personnel records. *See City of Santa Cruz*, 49 Cal.3d at 85-86 []; *City of San Jose v. Superior Court*, 67 Cal.App.4th 1135, 1146-47 . . . . (1998). Petitioner must identify the information sought "with adequate specificity to preclude the possibility that defendant is engaging in a 'fishing expedition.'" *City of Santa Cruz*, 49 Cal.3d at 85 . . . . . (citing *Pitchess*, 11 Cal 3d at 538 . . . . . )(internal quotation marks omitted).
>
> As discussed above, petitioner identifies no evidence of present misconduct documented in the files, or how general allegations of misconduct at the Rampart division would have been material to any issue at petitioner's trial. Absent more specific allegations, petitioner would have been unable to support a *Pitchess* motion. *See e.g., City of San Jose v. Superior Court*, 67 Cal.App.4th 1135, 1146-47 . . . . . (counsel's conclusory statement that officers did not obtain defendant's knowing and voluntary consent to search, without supporting factual allegations, insufficient to show a "specific factual scenario" establishing a "plausible factual foundation" for alleged misconduct).
>
> *Reyes v. Yates*, 2010 WL 2598280 at **15-16 (citations to record omitted).

Petitioner similarly failed to "set forth a 'specific factual scenario' establishing a 'plausible factual scenario' for allegations" that Tramel's personnel records would have provided support for Petitioner's eleventh hour claim that Tramel lied about Petitioner's statement. Without a good cause basis to conclude that Tramel's personnel records would have revealed support for Petitioner's claim that Tramel lied, this Court cannot conclude that the state court's denial of a continuance to permit a *Pitchess* motion prejudiced Petitioner. Accordingly,

///

12

the Court cannot conclude that the trial court abused its discretion in denying a continuance, resulting in a due process violation.

**V.    Ineffective Assistance of Counsel: Inarticulate Argument for *Pitchess* Motion**

As a second ground for habeas relief, Petitioner contends that, in the alternative to ground one, trial counsel provided ineffective assistance by failing to explain adequately the necessity for a continuance.

**A.    Standard of Review**

The purpose of the Sixth Amendment right to counsel is to ensure that the defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his trial counsel's performance "fell below an objective standard of reasonableness" at the time of trial and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The *Strickland* test requires Petitioner to establish two elements: (1) his attorney's representation was deficient and (2) prejudice. Both elements are mixed questions of law and fact. *Id.* at 698.

These elements need not be considered in order. *Id.* at 697. "The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* If a court can resolve an ineffectiveness claim by finding a lack of prejudice, it need not consider whether counsel's performance was deficient. *Id.*

///

13

B. **State Court Determination**

The California Court of Appeal concluded that defense counsel adequately conveyed the reasons for seeking a continuance to pursue a *Pitchess* motion:

> In making the continuance motion, counsel references Tramel's allegation that defendant said he intended to deliver the gun to a gang member. Counsel then explained defendant believed the officer was lying. We believe this explanation does convey why counsel wanted to bring a *Pitchess* motion. The import of counsel's statements is self-evident: if Tramel was lying about defendant's statement, the evidence of gang-relatedness would be weakened and a *Pitchess* motion might lead to evidence that would bolster defendant's evidence on this point. Defense counsel simply made an enthymematic argument rather than stating this obvious, implied conclusion that he believed a *Pitchess* motion would be helpful to his client's case. Defense counsel was not constitutionally ineffective.
>
> Even if defense counsel had adequately articulated the importance of the anticipated *Pitchess* motion, defendant suffered no prejudice.
>
> "A defendant claiming ineffective assistance of counsel under the federal or state Constitution must show both deficient performance under an objective standard of professional reasonableness *and prejudice under a test of reasonable probability of a different outcome*. [Citation.] Defendant is unable to show that counsel's performance resulted in prejudice to him." (*People v. Ochoa* (1998) 19 Cal.4th 353, 414.) The trial court did not deny the continuance motion because it believed the *Pitchess* motion was unimportant to the defense, it denied it as untimely. Thus the record shows that even a more robust explanation of "why a *Pitchess* motion was so critical" would not have resulted in a different outcome.

*Serrano-Aguilera*, 2013 WL 5569163 at *4 (footnote omitted).

C. **State Court Determination Was Reasonable**

This ground for relief requires little discussion. As the state court recognized, the trial court did not need defense counsel to explain in detail why a continuance was needed. The implicit reasoning was obvious to both the prosecution and the Court. Even if defense counsel had forcefully and explicitly set forth why Petitioner needed the continuance, the result would not have changed -- the *Pitchess* motion was untimely, and the trial court denied the motion for continuance on that basis. In the absence of prejudice, the claim of ineffective assistance of counsel cannot succeed.

14

**VI.    Improper Theory of Possession of a Weapon by a Gang Member**

As his third ground for habeas relief, Petitioner contends that the gang enhancement (Cal. Penal Code § 186.22(b)) was submitted to the jury on an unlawful theory. The state court held that this claim was barred by procedural default for failure to lodge a contemporaneous objection. *See Serrano-Aguilera*, 2013 WL 5569163 at *6.

A district court cannot hear a federal petition for writ of habeas corpus unless the highest state court has a full and fair opportunity to hear a claim. 28 U.S.C. § 2254(a). When a state prisoner has defaulted on his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). An adequate rule is one that is "firmly established and regularly followed." *Id.* (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)); *Bennett v. Mueller*, 322 F.3d 573, 583 (9th Cir. 2003). An independent rule is one that is not "interwoven with federal law." *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).

The Court should decline to address this claim, which was procedurally defaulted.

**VII.    Certificate of Appealability**

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the

United States, or to test the validity of such person's detention pending removal proceedings.

 (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

  (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

  (B) the final order in a proceeding under section 2255.

 (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

 (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

**VIII.** **Conclusion and Recommendation**

The undersigned recommends that the Court deny the petition for writ of habeas corpus, enter judgment for Respondent, and decline to issue a certificate of appealability.

///

///

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 31, 2017** /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE